```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA          :
                                  :
         v.                       :         File No. 1:08-CR-98
                                  :
EMILE PARKER                      :
_____    :

## RULING ON MOTION TO DISMISS
### (Paper 24)

I.  Introduction

Defendant Emile Parker moves to dismiss the indictment alleging illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2).  (Paper 24).  Parker contends the indictment is insufficient to support the charge because his removal proceeding was unlawfully conducted.  Id. at 2.  The government responds that any collateral attack on the underlying removal proceeding is statutorily barred and, in the alternative, even if the statute permitted a collateral attack, Parker cannot meet the requirements.  (Papers 25, 28.)  The parties also filed supplemental briefing arguing the applicability of 8 U.S.C. § 1225(b)(1)(D) in light of Parker's claim to United States' citizenship.  (Papers 27, 28.)  For the reasons stated below, the motion to dismiss the indictment is denied and the Court declines to decide at this time whether Parker may collaterally attack the underlying removal order.

II.  Background

Parker, a Canadian citizen and Haitian native living in Florida since 1995, returned to Miami International Airport on a flight from the Dominican Republic on August 1, 2008.[1]  Parker had numerous convictions (11) and arrests (22) between 1996 and 2002, including convictions for armed robbery in 1996 and cocaine distribution in 2002.[2]  (Paper 25, Ex. 2 at 4.)  Parker presented his Canadian passport but, when immigration officers discovered his criminal record, he was detained and removed from the United States to Canada under 8 U.S.C. § 1225(b)(1).  (Paper 25, Ex. 1.)  8 U.S.C. § 1182(a)(7) designates aliens not in possession of a valid entry document and valid travel document as inadmissible.  Subsection (A)(i) of § 1225(b)(1) then directs an immigration officer who determines that an alien arriving in the United States is inadmissible under § 1182(a)(7) to "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of prosecution."  8 U.S.C. § 1225(b)(1)(A)(i).

---

[1]  The facts are drawn from the parties' memoranda, Papers 24 and 25.

[2]  The government's brief refers to a 1999 conviction for armed robbery as well, however, that conviction is not noted in the lengthy recitation of Parker's criminal history in the form recording Parker's sworn statement prior to his removal.  (Paper 25, Ex. 2.)

2

The immigration officers recorded Parker's sworn statement in which he stated he is a Canadian citizen but also that he had reason to believe he is a United States citizen. (Paper 25, Ex. 2 at 2.) Defendant admitted to a lengthy criminal history. <u>Id.</u> at 3-4. Parker was informed -- and affirmed he understood -- that if he reentered the United States within five years he may be subject to criminal prosecution. <u>Id.</u> at 5. Finally, Parker stated he had no fear or concern of returning to his home country or being removed and he would not be harmed if he was returned to his home country or country of last residence. <u>Id.</u> at 6.

Following his removal to Canada, Parker reentered the country on August 2, 2008. Parker was a passenger in a car his sister attempted to drive across the border into the United States. Border officials discovered Parker's removal on the prior day and directed the car to a secondary inspection area. The car made a u-turn to return to Canada, but when it re-crossed the border, Parker was not in the car. The next day, following a tip from a Vermont resident, Vermont border patrol agents intercepted Parker at a local store. He was identified, arrested and later indicted for illegally reentering the United States.

III. <u>Governing Law</u>

    A.   <u>Motion to Dismiss an Indictment</u>

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only track the language of the statute charged

and state the time and place of the alleged crime.  United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (internal citation omitted).  An indictment is sufficient if it contains the elements and fairly informs the defendant of the offense charged and enables the defendant to plead double jeopardy in future prosecutions for the same offense.  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)).  On a motion to dismiss, "the indictment must be tested by its sufficiency to charge an offense."  United States v. Sampson, 371 U.S. 75, 78-79 (1962).  In the absence of a full proffer of the government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."  Alfonso, 143 F.3d at 776-77 (reversing dismissal of indictment where district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge).

Under Federal Rules of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  Fed. R. Crim. P. 12(b)(2).  The Second Circuit has defined the "general issue" as "whether the defendant is guilty of the offense charged."  United States v. Doe, 63 F.3d 121, 125 (2d Cir. 1995).  Motions to dismiss indictments are disfavored.

4

See, e.g., United States v. De La Pava, 268 F.3d 157 (2d Cir. 2001) (dismissal of an indictment is an "extraordinary remedy" reserved for extremely limited circumstances implicating fundamental rights).

Federal criminal procedure does not provide for pretrial determination of the sufficiency of the evidence: there is no federal mechanism resembling a motion for summary judgment in the civil context. See, e.g., United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005); United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000). Rule 12 was not intended to permit motions requiring consideration of facts outside the pleadings because, if that were the case, the pretrial motion could become a trial of the general issue. 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 194 (4th ed. 2008). On a motion to dismiss, the question is solely whether the allegations of the indictment, if true, are sufficient to establish a violation of the charged offense. Sampson, 371 U.S. at 78-79. However, the Second Circuit has allowed a collateral attack on a deportation order in a § 1326 prosecution at the motion to dismiss stage. United States v. Calderon, 391 F.3d 370 (2d Cir. 2004) (affirming dismissal of § 1326 indictment where defendant satisfied § 1326(d) collateral attack requirements).

B.  8 U.S.C. § 1326

Under 8 U.S.C. § 1326(a), it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General.  Section 1326(b)(2) applies to aliens whose prior removal took place "subsequent to a conviction for commission of an aggravated felony," and is a penalty provision authorizing a court to increase the penalty for an alien's illegal return if the initial removal was subsequent to an aggravated felony conviction.  United States v. Santiago, 268 F.3d 151, 154 (2d Cir. 2001).  Because a prior deportation or removal order is an element of the criminal offense, a § 1326(a) defendant may collaterally attack the validity of the prior order and proceedings.  United States v. Calderon, No. 02 CR 0691, 2003 WL 1338943, at *4 (E.D.N.Y. Jan. 9, 2003), aff'd, 391 F.3d 370 (2d Cir. 2004) (internal citations omitted).  A deportation proceeding is not valid and cannot be used to establish prior deportation for § 1326(a) purposes if the proceeding did not afford an alien due process of law.  Id. (internal citations omitted).

Section 1326(d) allows a collateral attack on a deportation order if an alien demonstrates:  "'(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at

6

which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'" Calderon, 391 F.3d at 374 (quoting 8 U.S.C. § 1326(d)).

C. 8 U.S.C. § 1225(b)(1)(D)

The government initially argued Parker is foreclosed from collaterally attacking his deportation order by 8 U.S.C. § 1225. Section 1225(b)(1)(D) provides that a court hearing a § 1326 action does not have jurisdiction to hear a claim attacking the validity of an order of removal entered under certain statutory provisions, including § 1182(a)(7), the authority under which Parker was removed. In supplemental briefing addressing the § 1225 issue exclusively, the government addressed the citizenship status of Parker and explicitly stated the Court could ignore § 1225 because even if a collateral attack were allowed, "Parker could not satisfy the Second Circuit's standard for demonstrating fundamental unfairness." (Paper 28 at 5.) Therefore, the Court declines to decide whether § 1225(b)(1)(D) would preclude Parker from collaterally attacking his removal. Id.; see also United States v. Lopez-Vasquez, 227 F.3d 476, 486 (5th Cir. 2000) (holding § 1225(b)(1)(D) does not preclude determining whether the requirements for a successful collateral attack are not met).

7

IV. Analysis

The indictment sufficiently charges Parker with the offense of illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). Parker seeks to collaterally attack the removal order underlying the illegal reentry charge and asserts he was prejudiced by the procedural errors following his claim to citizenship which prevented his claim from being heard. (Paper 24 at 4-5.) The government contends Parker cannot prove his claim to citizenship because his father is not a citizen. (Paper 28 at 1-3.) Further, the government reasons Parker's status as an aggravated felon renders it "extremely unlikely" that he would have received any discretionary relief. (Paper 25 at 8-9; Paper 28 at 5-6.)

Evaluation of the parties' arguments and factors set forth in § 1326(d) would require the Court to look well beyond the indictment to engage in a review of the evidence to determine whether Parker has a valid claim to citizenship and the likelihood Parker would not have been removed but for the alleged errors in his removal. See Calderon, 391 F.3d at 376 (the fundamental unfairness prong of § 1326(d) requires a fundamental procedural error and prejudice; demonstrating prejudice requires a reasonable likelihood that the removal would not have occurred in the absence of the procedural error); see also Paper 28 at 1-2 (noting the government would dismiss the indictment if Parker is

8

a citizen because he would not be guilty of the offense of illegal reentry).

The government is required to prove each element of § 1326(a), including that Parker was removed.  Parker may still raise the defense that the removal proceedings did not afford him due process.  The Court may be inclined to find that the requirements of § 1326(d) have not been met and therefore Parker cannot collaterally attack his removal order, however, at this stage of the litigation on the present record, the Court refrains from making such a determination.  Therefore, the Court defers decision on the validity of the removal order under § 1326(d) because it would be tantamount to a decision of the general issue as it is undisputed that, without consent of the Attorney General, Parker was found in the United States after he was removed.  See United States v. Doe, 63 F.3d 121, 125 (2d Cir. 1995) (holding defendant could not raise in pretrial motion a defense to liability for the offense charged because resolution requires trial of the general issue).

V.  Conclusion

The motion to dismiss the indictment (Paper 24) is denied. This case will be placed on the March 24, 2009 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 6th day of February, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge